# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA A. ARIAS, | CASE NO. 1:10-cv-02186-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Linda A. Arias, by her attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act").  The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.  Following review of the record as a whole and applicable law, this Court affirms the agency's determination to deny benefits to Plaintiff.

I.  **Administrative Record**

    A.  **Procedural History**

Plaintiff is insured under the Act through December 31, 2012.  On August 15, 2007, Plaintiff filed for disability insurance benefits, alleging disability beginning June 10, 1996.  Her claim was initially denied on April 25, 2008, and upon reconsideration on September 19, 2008. Plaintiff filed a timely written request for a hearing on October 23, 2008.

Plaintiff appeared and testified at a hearing on May 5, 2010.  In the course of the hearing, Plaintiff amended her alleged onset date to March 6, 2006.  On June 22, 2010, Administrative Law Judge John Cusker denied Plaintiff's application.  Plaintiff appealed to the Administrative Council, which denied review on September 18, 2010.  On November 22, 2010, Plaintiff filed her District Court complaint.

**B.     Agency Record**

Following graduation from high school, Plaintiff (born February 27, 1951) took classes for five or six years.  Later while working for the City of Kingsburg, she took computer and management classes.  Plaintiff worked as a secretary for the City of Kingsburg from 1990 to 1996.  Beginning in the mid-1990's, Plaintiff had a gap in her employment history which included her first carpal tunnel surgeries and time spent caring for her husband, who was very ill.

In 1999 and 2000, Plaintiff worked as a manager for a mom-and-pop grocery store in the country.  In 2001, she began doing "soft-count" for a casino, which involved counting money and tickets from slot machines.  Following Plaintiff's second carpal tunnel surgeries, in or about 1996, the casino declined to accommodate her limitations and ended her employment there.

Plaintiff testified that she experienced severe pain in her hands and almost constant fatigue as a result of fibromyalgia.  She was able to sleep for only brief time periods since sleep reduced circulation to portions of her body, resulting in intolerable pain.  Plaintiff was taking Cymbalta for depression, Synthroid for hypothyroidism, and ibuprofen and Vicodin for pain.  By following a strict diet and using medication, Plaintiff was able to avoid needing insulin for her diabetes.[1]

According to Plaintiff's testimony, she was able to stand for five minutes and to sit for about forty minutes.  She could lift about five pounds.  She could stoop but not squat.  She had poor dexterity, and was unable to open twist tops, pull tabs, and tabs such as those on meat and milk packages.  She could not pull the corners of fitted sheets onto the mattress.  She could not tie things or cut her own meat.  Plaintiff could not manage the weight of a full cup or drinking glass.  The vacuum cleaner was almost too heavy to manipulate.  She could do light laundry but relied on

---

[1] Between her examination by Dr. Rustom Damania in 2008 and the hearing date, Plaintiff successfully confronted her "life-threatening" obesity and lost nearly one hundred pounds.

2

1   her adult children to wash towels and sheets.  Her daughter prepared supper for Plaintiff and her
2   husband, and cared for Plaintiff's dogs.
3       Plaintiff was able to shower by herself and brush and comb her own hair.  She was unable
4   to pull on her shoes or put on her own bra.  She could not hold a curling iron or blowdryer.   She
5   could do light cooking such as quesadillas, soup, or sandwiches.  Her reading had become limited
6   since books and magazines were too heavy to hold.  She watched about ten hours of television
7   each day.
8       **Primary care physician.**  Plaintiff first consulted her primary care physician, Eric
9   Sorenson, M.D., regarding her pain and sleeping difficulties.  At various appointments, Sorenson
10  observed tenderness in Plaintiff's back and legs.  He also noted that Plaintiff moved slowly.
11  Sorenson initially considered Plaintiff to be demonstrating joint pain.  He referred Plaintiff to
12  various specialists for evaluation and treatment.
13      **Carpal Tunnel Treatment.**  Sergio Ilic, M.D. performed a second carpal tunnel release
14  on Plaintiff's right hand on October 3, 2005, and on her left hand on March 6, 2006.  During
15  follow-up appointments, Plaintiff continued to report severe pain and difficulty using her hands.
16  Ilic noted that physical therapy was helping somewhat but also observed that, although Plaintiff
17  could make a full fist by April 4, 2006, she continued to complain that she was unable to hold
18  anything with either hand.  In a September 1, 2006 report to Sorenson, Ilic wrote:

> The patient continues to complain of significant pain in both wrists and hands.
> Nothing seems to have helped.
>
> From an objective point of view, there is no swelling, no effusion, no cellulitis.
> The patient does not have any signs of [reflex sympathetic dystrophy] any longer.
>
> * * * * *
>
> From an orthopedic point of view, there is not very much more I can do for her.

AR 234.

Ilic recommended that Plaintiff receive pain management treatment.  He also noted that
treating Plaintiff's fibromyalgia was complicated by her allergic reaction to Lyrica.

**Fibromyalgia.**  On June 1, 2007, rheumatologist Charles H. Boniske, M.D., reported to
Dr. Sorenson that Plaintiff had generalized fibromyalgia.  Boniske reported that Plaintiff's axial

3

skeleton had diffuse trigger points in her cervical spine, periscapular muscles, anterior chest wall and paralumbar musculature. Although her joints moved well and no gross inflammation or synovitis was evident, her peripheral skeleton had trigger points over the epicondyles, the shoulder girdle, and the trochanters, with the right side greater than the left. Characterizing Plaintiff as an "unfortunate woman," Boniske opined that the combination of chronic pain and her husband's recent decline in health caused added stress that increased Plaintiff's health problems. The doctor encouraged Plaintiff to stretch, walk, and lose weight.

On October 1, 2007, Boniske noted that Plaintiff continued to complain of pain and resulting poor sleep. Her diabetes and thyroid disease were well controlled. Range of motion in her joints was normal. Her hands were normal with good grip strength. The exam revealed, however, that Plaintiff's elbows were tender over epicondyles; her hips were tender over the trochanteric bursa; and she had bilateral knee pain. An examination of her cervical spine showed tenderness along the trapezius muscle and parathoracic and parascapular trigger points. Her chest wall was tender. Boniske also observed paralumbar trigger points.

**Consultative psychiatrist.** Plaintiff told psychiatrist Shireen R. Damania, M.D., that she was experiencing depression due to pain, inability to sleep, and financial difficulties. Damania summarized:

> The claimant was pleasant, cooperative, with good interpersonal and social skills. She was courteous throughout the interview. No difficulties were noted in memory, concentration, persistence and pace. Her depression was appropriate to her physical condition.
>
> She is able to understand, carry out, and remember three- and four-step job instructions, but currently would have difficulty with detailed and complex job instructions. She is pleasant and cooperative and able to respond appropriate to coworkers, supervisors, and the public. From the psychiatric point of view, she is able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision.

AR 312-313.

**Internal medicine consultant.** Internist Rustom F. Damania, M.D., identified trigger points at right and left lower cervical, right and left suprascapula, right and left hips, right and left wrists, and right and left knees. Nonetheless, Plaintiff demonstrated grade 4/5 strength in both hands and no muscle atrophy. Range of motion was normal throughout. Damania also observed

vague, non-dermatomal-type sensory impairments in both lower extremities and in all fingers on both hands. He opined:

> The patient is a 57-year-old female. The patient should be able to lift and carry 10 pounds occasionally and 10 pounds frequently. The patient should be able to stand and walk six hours out of a normal eight hour workday with appropriate breaks. The patient should be able to sit six hours. The patient does not require an assistive device for ambulation. No definite postural limitations to bending, stooping, or crouching. She should be able to do frequent, basic handling and manipulation of light objects. No definite manipulative limitations. No relevant visual or communicative impairments.

AR 319.

**Agency analysis.** Paul F. Frye, M.D., opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could stand or walk six hours in an eight-hour work day; could sit about six hours in an eight-hour work day; had limited ability to push or pull with her upper extremities; should never climb ladders, ropes or scaffolds; could occasionally climb stirs and ramps, balance, stoop, kneel, crouch and crawl; and had unlimited ability to manipulate except for limited ability for gross manipulation.

Evelyn B. Aquino-Caro, M.D., opined that Plaintiff had affective disorders that were not severe. Aquino-Caro observed mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace. She reported no episodes of decompensation.

## II. Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20

C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following questions:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of March 6, 2006.  Her severe impairments included: fibromyalgia, carpal tunnel syndrome post carpal tunnel release, diabetes mellitus type II, hypertension, and obesity.   None of these impairments met or equaled the requirements of a listed impairment.  Plaintiff retained the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(b).  Accordingly, she was able to perform her past relevant work as a secretary.

### III.  Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

## IV.    Plaintiff's Credibility

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons to support his finding that her testimony lacked credibility. The Commissioner disagrees.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if he or she decides to reject a claimant's pain testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary

///

techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

In the hearing decision, Judge Cusker provided a detailed discussion of his reasoning in concluding that Plaintiff was not fully credible, both contrasting Plaintiff's daily activities with her claimed limitations and examining Plaintiff's claimed limitations with respect to specific findings reported by Drs. Sorenson, Boniske, and Rustom Damania, and nurse practitioner Gleason. Ultimately, he focused on Dr. R. Damania's residual functional capacity assessment, which reflected the findings of his physical examination of Plaintiff. *See discussion at* AR 17-18.

The ALJ's findings were supported by substantial evidence in the agency record. When the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

///

### IV.     Conclusion and Order

For the reasons discussed above, this Court hereby AFFIRMS the agency's determination to deny Plaintiff disability benefits.  The Clerk of Court is directed to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:     January 23, 2012**                              /s/ **Sandra M. Snyder**
                                                                                        UNITED STATES MAGISTRATE JUDGE